**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RYSHEID MALIK EL,                )
*also known as*                  )
RYSHEID MALIK EX REL BALDWIN,    )
                                 )
     Plaintiff            )          Case No. 2:21-cv-01325
                                 )
     v.                   )          Magistrate Judge Patricia L. Dodge
                                 )
CORRECTIONS OFFICER NICHOLAS     )
MATSON, CORRECTIONS OFFICER      )
JEFFEY GRANTZ, DEPUTY WARDEN     )
GEORGE LOWTHER and               )
LIEUTENANT STEVEN PELESKY.       )
                                 )
     Defendants.          )

## <u>MEMORANDUM OPINION</u>[1]

Pending before the Court is Defendants' Motion for Summary Judgment. (ECF 47.) For the reasons that follow, the Motion will be granted in part and denied in part.

**I.      Relevant Procedural Background**

Plaintiff Rysheid Malik El ("El") (also known as Rysheid Malik ex rel. Baldwin) is proceeding pro se in this civil rights action. He commenced this lawsuit when he was a pretrial detainee at the Westmoreland County Prison ("WCP").[2] Defendants, each of whom worked at the WCP during the relevant time (August and September 2021) are: (1) Corrections Officer ("CO")

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. (ECF 5, 16, 31.) Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

[2] As of June 2022, El is no longer incarcerated. (ECF 39.)

Nicholas Matson; (2) CO Jeffery Grantz; (3) Deputy Warden George Lowther; and (4) Lt. Steven Pelesky (collectively "Defendants").

El filed the original Complaint (ECF 11) in December 2021. After Defendants moved to dismiss, El filed the Amended Complaint (ECF 29), which is the operative pleading, in April 2022.[3] In the Amended Complaint, El brings constitutional tort claims against each defendant under 42 U.S.C. § 1983 as well as related state law claims against Matson and Grantz.

El claims that Matson and Grantz violated his Fourteenth Amendment rights and committed the intentional tort that he refers to as "physical assault" (ECF 29 at 15) by subjecting him to excessive force on August 23, 2021. On that date, El alleges, he could not return to his cell without assistance because he was ill, in part "due to sciatic nerve and right leg cramping [from] which he suffers." (*Id.* at 13.) El claims that Matson and Grantz, who physically escorted him back to his cell, pushed him onto the floor of the cell and injured his left knee. (*Id.*)

Matson reported El for disobeying his orders to return to the cell. Pelesky presided over El's subsequent disciplinary hearing. El claims that Matson violated his due process rights by issuing a misconduct. (*Id.* at 14.) El also brings a procedural due process claim against Pelesky for allegedly "denying [him a] proper Board Hearing[.]" (*Id.*) Finally, El's claim against Lowther is based on the alleged unavailability of the prison's grievance process. (*Id.* at 15.)

-----

[3] Because El was still incarcerated when he filed the Amended Complaint, the exhaustion of administrative remedies requirements under the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996) still applied to him. *Garrett v. Wexford Health*, 938 F.3d 69, 98 (3d Cir. 2019) (holding that an amended complaint filed post-incarceration cures a former inmate's failure to exhaust administrative remedies while imprisoned so long as the amended complaint relates back to the initial complaint).

El sues Matson, Grantz and Pelesky in both their official and individual capacities. He sues Lowther in his official capacity only. (*Id.* at 2-3.) He seeks declaratory relief and money damages. (*Id.* at 16.)

After discovery, Defendants filed the pending Motion for Summary Judgment (ECF 47), Memorandum in support (ECF 48), Concise Statement of Material Facts ("CSMF") (ECF 50) and Appendix  (ECF 49). In the order directing El to respond to Defendants' motion, the Court advised him of the requirements for opposing summary judgment under Federal Rule of Civil Procedure 56 and this Court's Local Rules 56.C and 56.E. (ECF 51.)

Although El filed a response in opposition and supporting exhibits (ECF 53, 57), he failed to properly respond to Defendants' CSMF as required by Local Rule 56.C.1 because he filed no document that responds to each of Defendants' numbered paragraphs. "This rule requires non-moving parties to a motion for summary judgment to file a responsive concise statement in which they must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the non-moving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue." *Peay v. Co Sager*, No. 1:16-cv-130, 2022 WL 565391, at *1 (W.D. Pa. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 562936 (W.D. Pa. Feb. 23, 2022). "Courts located in the Western District of Pennsylvania require strict compliance with the provisions of Local Rule 56." *Id.* (collecting cases).

The "severe consequences for not properly responding to a moving party's concise statement" are that "[a]ny alleged material facts 'set forth in the moving party's Concise Statement of Material Facts …. which are claimed to be undisputed, will for the purpose of deciding the

motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.'" *Hughes v. Allegheny Cnty. Airport Auth.*, No. 1:15-cv-221, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017) (citing LCvR 56.E), *aff'd*, 728 F. App'x 140 (3d Cir. 2018).

Although courts provide some leniency to pro se litigants when applying procedural rules, pro se litigants may not ignore such rules. *See Peay*, 2022 WL 565391, at *2 (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) and *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Thus, the Court will treat Defendants' concise statement of material facts as undisputed but will consider any contradictory facts asserted by El insofar as they are properly supported in the record.[4] *Whetstone v. Fraley & Schilling Trucking Co.*, No. 22-cv-1018, 2022 WL 4533847, at *2 (3d Cir. Sep. 28, 2022).

---

[4] A party may not rest on his or her pleadings to create a fact issue sufficient to survive summary judgment. However, allegations that are based on personal knowledge and which are contained in a verified complaint (ordinarily not required under the Federal Rules of Civil Procedure) may be used to oppose a motion for summary judgment because it can be treated as an affidavit or declaration. *See, e.g.*, *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985). Neither El's original complaint nor the operative Amended Complaint was sworn or signed under penalty of perjury and, therefore, the Court cannot treat either of them as the equivalent of an affidavit or declaration in opposition to Defendants' Motion for Summary Judgment. *See, e.g.*, *Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003); 11 MOORE'S FEDERAL PRACTICE-CIVIL § 56.94[2A], Lexis (database updated June 2023) ("A verified pleading may serve as an affidavit or declaration for purposes of summary judgment to the extent that it meets the requirements for summary judgment affidavits and declarations discussed above. However, an unverified pleading may not be used as summary judgment evidence.") Moreover, El's response in opposition to Defendants' motion cites, among other things, the alleged "declaration" of Forrest Piper and the "affidavit of truth" of Steve Dorough, which are exhibits to the original complaint at ECF 11 at 12 and ECF 11-1 at 3, respectively. Because neither document is sworn or signed under penalty of perjury, the Court cannot consider them.

Finally, Defendants' submission (Exhibit 1) includes three video recordings of events that occurred on August 23, 2021, just before and sometime after Matson, Grantz and El reached El's cell. When the events at issue have been captured on videotape, the court must view the facts in the light depicted by the videotape in determining whether there is any genuine dispute as to material facts. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

Together, the first two videos (which are security videos, short in duration with no audio), show El at around 4:00 p.m. on August 23, 2021 sitting in the dayroom and then being escorted up a stairway toward his cell by Matson and Grantz. The third video, which is just over 24 minutes in length, and does have audio, is a recording from later that same day showing a group of guards (none of whom are defendants in the case) removing El from his cell sometime after the alleged incident of excessive force and escorting him to a different housing unit.[5] Along the way to the new unit, El meets in a hallway with a group of individuals who appear to be with the medical staff and who briefly examine him.

## II.    Factual Background

El was a pretrial detainee at all times during the events at issue in this lawsuit. On August 23, 2021, recreation time in his unit was from 2:15 p.m. to 4:00 p.m. (ECF 53 at 1, Thomas Lee Williams Decl.) Earlier that morning, El was seen by medical staff at the WCP and he complained of "headache and vision disturbance, pain level 6/10" with pressure behind his eyes and nose and sinus region. (ECF 50, Defs' CSMF ¶¶ 1-2.)

---

[5] This video, which was recorded by a handheld camera, does not indicate the exact time at which the recorded events occurred. However, it is undisputed that it is a video that recorded events after the alleged incident of excessive force and when officers were removing El from his cell and transferring him to another unit to await his disciplinary hearing.

Later that day, El was out of his cell during recreation time. At around 4:00 p.m., when it was time for the inmates to return to their cells, El was seated in a chair in the dayroom next to the guard station. One of the security videos submitted by Defendants shows that El's chair was close to and facing a wall. El was hunched over, his head was facing down and he was leaning towards the wall. (Defs' Ex. 1, Security Videos.)

Matson asked El three times to go to his cell and lock in but El did not obey this order. (ECF 50, Defs' CSMF ¶ 3.) Matson and/or Grantz then helped El get up from his chair and escorted him out of the dayroom. The security videos show that El did not resist when Matson took him by one of his arms and helped him get up from the chair, or when Matson and Grantz walked beside him, providing him with support under each arm, as they headed towards and then up a flight of stairs. As the three of them walked up the stairs, El at one point stumbled or dragged his feet. Matson and Grantz supported El and he did not fall. (Defs' Ex. 1, Security Videos; *see also* ECF 50, Defs' CSMF ¶¶ 5-6.)

There is no video evidence in the record showing what occurred when Matson and Grantz placed El in his cell. Matson avers in his affidavit that he and Grantz left El in a standing position inside his cell leaning against the wall. Similarly, Grantz avers that they left El in a standing position inside his cell and closed the door. According to Matson and Grantz, El did not suffer any injury during their encounter with him. They also maintain that El did not complain of any pain when they placed him in his cell, that they had  a clear pathway to get to the cell, and that El did not strike his left knee on anything when he was being escorted to and placed in his cell. (ECF 49-8, Defs' Ex. 8, Matson Aff. ¶ 4; ECF 49-9, Defs' Ex. 9, Grantz Aff. ¶ 4.)

In contrast, Thomas Lee Williams, who was El's cellmate at the time, avers in his declaration that Matson and Grantz "aggressively pushed [El] in the cell and [El] fell straight to

the floor as if he couldn't support himself." (ECF 53 at 2, Williams Decl.) Williams also avers that before this incident, he could see and hear El when El was sitting on the chair in the dayroom at around 4:00 p.m. Williams asserts that he heard El repeatedly ask Matson for medical attention. According to Williams, El told him (Williams) that he could not walk back to the cell on his own. (*Id.*)

Later in the day on August 23, 2021, El was issued a disciplinary report for failing to obey Matson's orders to return to his cell and lock in. (ECF 50, Defs' CSMF ¶ 8.) The third video submitted by Defendants shows several officers escort El from his cell and transfer him to another unit pending his disciplinary hearing. (*Id.* ¶ 10; Defs' Ex. 1, Handheld Video of Transfer.) In this video, El appears to be having trouble bearing weight *on his right leg* because of sciatica pain. The video records El speaking, but at times his voice is not audible because he is either facing away from the camera or speaking low. El does not appear to complain about pain in his left knee, and El has not directed the Court to anything in this video that supports his claim that his left knee was injured at this time.

Around 11 minutes into this video, an individual who is presumably on the medical team asks El: "So you are saying you can't walk?" El responds, but it is hard to discern what he is saying. El mentions something about his sciatica and states that he is experiencing a cramp on his right side. The individual examining him states: "[T]here's not much you can do for a sciatic nerve but you can let the PA know, she can put you on some meds." (Defs' Ex. 1, Handheld Video of Transfer at 0:11:41-0:12:03.)

The medical staff's chart notes for El's visit on 4:37 p.m. on August 23, 2021 record that he stated that he was experiencing pain on the right side of his body. He did not express a complaint about his left knee or state that he was injured that day by corrections officers. (ECF 50, Defs'

7

CSMF ¶ 9; ECF 49-3 at 21, Defs' Ex. 3; ECF 49-6 at 2, Defs' Ex. 6.) Similarly, during a sick call visit four days later, on August 27, 2021, the examining physician's assistant recorded in her notes: "[El] reports significant 'sciatica' pain that has been disabling the past few days. He reports recurrent issues with sciatica and that he typically requires a 'cortisone' shot to help relieve his pain. He denies new trauma or injury." (ECF 49-6 at 4, Defs' Ex. 6.)

El's first recorded complaint of pain in his left knee was on September 1, 2021. In a sick call conducted on that date, El stated that he had pain in his left knee and that he "struck his knee when the 'CO's took him down' last week." (*Id.* at 5; ECF 50, Defs' CSMF ¶ 22.)

An x-ray of El's left knee was taken the next day, on September 2, 2021. (*Id.*; ECF 50, Defs' CSMF ¶ 23.) The physician's assistant who met with El on September 9, 2021 recorded in her notes that the x-ray revealed that his left knee had "a hairline fissure fracture…at the proximal fibular epiphysis (ACUTE) and fabella…(CHRONIC)." (*Id.* at 3.) She also noted that El "does have some diffuse knee pain…and did have an injury on 8/23/21 where he fell onto his knee. He is ambulating and states mild pain with ambulation. He has full [range of movement] of the knee without significant pain." (*Id.*) The physician assistant advised El that he should wear a knee brace, but El refused "as he would need to be housed in medical. He signed [a] release of responsibility for refusing a brace at this time." (*Id.*; ECF 50, Defs' CSMF ¶¶ 23-26.)

As mentioned, El was issued a disciplinary report on August 23, 2021 for failing to obey Matson's orders to return to his cell. (ECF 50, Defs' CSMF ¶ 8.) The WCP's policy governing the procedures for disciplinary hearings is set forth in the Inmate Handbook and provides that: (1) "the Disciplinary Hearing Board will be made up of three impartial persons, none of whom were involved in the alleged violations"; (2) the inmate charged with a violation will have a chance to make a statement and present evidence; (3) the inmate charged will be permitted to call witnesses

in his defense, including through written statements contained on witness forms; and (4) the inmate receives a written copy of all of the findings of fact made by the Disciplinary Hearing Board. (ECF 49-4 at 12, Defs' Ex. 4.)

El's hearing was held on August 25, 2021. The Disciplinary Hearing Board consisted of Pelesky (who presided as Chairperson) as well as  Deputy Warden Schwartz and CO Thomas Gildard, neither whom are defendants in this case. El testified at the hearing, stating: "I was not feeling good at the time. I suffer from nerve damage. I was unable to lock up by myself." (ECF 50, Defs' CSMF ¶¶ 11, 12.)

The WCP's Inmate Handbook provides that witness forms are to be given to the accused inmate when he is notified that he has been accused of violating a prison rule. It also provides that a witness form "must be immediately filled out listing inmate witnesses that can present testimony on [the accused inmate's] behalf [at the disciplinary hearing] and returned to the housing unit officer. A written statement will immediately be written by this witness, outlining specifically what they saw and/or heard occur." (ECF 49-4 at 12, Defs' Ex. 4) (emphasis in original).

El presented no witness statements in his defense at his disciplinary hearing, even though, at his request, witness forms were provided to Williams (El's cellmate at the time of the incident) and Lindsay Wright (another inmate). (ECF 50, Defs' CSMF ¶ 13; ECF 49-3 at 8, Defs' Ex. 3 (El's Inmate Request for Witnesses).) Defendants have produced Williams' and Wright's witness forms. Williams wrote on his: "Last night at 3:00 a.m. [El] went to medical for a wellness check & throughout the day he appeared to not be feeling well & was trying to get medical attention." (ECF 49-1 at 9, Defs' Ex. 3.) El does not explain why he did not present Williams' statement at the disciplinary hearing. There is no evidence that would support a finding that he was prevented

from offering it. As for Wright's witness form, it merely contains the notation that Wright was not willing to make a statement or sign the form. (*Id.* at 10.)

Following the disciplinary hearing, El was provided with a copy of the Board's August 25, 2021 Incident Hearing Summary. In this document, El was notified that the Board found that he committed the offense of refusing to obey a lawful order and sanctioned him to 10 days in the disciplinary segregation housing unit, which he was credited with having begun serving on August 23, 2021. (*Id.* ¶¶ 11, 14; ECF 49-3 at 4, Defs' Ex. 3.)

The WCP has a grievance procedure. It is set forth in the Inmate Handbook and also in the Disciplinary Housing Unit Handbook, both of which were available to El at all times, including when he was in the disciplinary segregation housing unit. (*Id.* ¶¶ 17-18; *see also* ECF 49-4, Defs' Ex. 4 (relevant excerpts of the Inmate Handbook) and ECF 49-5, Defs' Ex. 5 (relevant excerpts of the Disciplinary Housing Unite Handbook)). The WCP's grievance procedure provides that inmates must file a grievance within 15 days of the incident being grieved. (*Id.* ¶¶ 15-16.) Thus, El had until on or around September 7, 2021 to grieve Mason's and Grantz's alleged misconduct, and until on or around September 9, 2021 to challenge Petensky's alleged failure to provide him with a fair disciplinary hearing.

The WCP grievance procedure also provides that, aside from emergencies, "[p]rior to filing a grievance the inmate must first attempt to have his complaint resolved by making a written complaint through the normal chain of command[.]" (ECF 49-4 at 5, Defs' Ex. 4.) To receive a grievance form, an inmate must first show, in writing, the steps he took to attempt to resolve his issue. (*Id.*) Grievance forms are provided to inmates by the Deputy Warden of Security only after "the chain of command procedure has been exhausted." (*Id.* at 6.)

El admits that he did not file a grievance regarding any of the claims he brings in this case. (ECF 50, Defs' CSMF ¶ 16.) On September 1, 2021, El submitted an inmate request slip in which he explained that he attempted to resolve, through the normal chain of command by contacting Lowther, his excessive force claims against Mason and Grantz and his claim that Pelesky (identified as the "Lt.") failed to follow the required procedures during the August 25, 2021 disciplinary hearing. (ECF 57-3 at 1, Pl's Ex. 1-A.) El wrote on this request slip that he was seeking grievances form so that he could grieve those claims. This request slip contains a notation by El, dated September 24, 2021, that he received "no response" to it. (*Id.*)

In the meantime, on September 8, 2021, El had submitted another inmate request slip in which he asked whether his appeal rights were still available to challenge the Disciplinary Hearing Board's action. An individual who is not a defendant in this case responded to that request slip on September 21, 2021 and instructed El to "ask a Lt. or Deputy." (ECF 11-5 at 1, Pl's Ex. 3A.)

El spoke with Lowther on September 22, 2021. By this date, the time for El to file a timely grievance challenging either the alleged incident of excessive force or the alleged improper disciplinary hearing had expired. Thus, Lowther told El that he did not exhaust his administrative remedies by filing a timely grievance. (ECF 50, Defs' CSMF ¶ 20.)

## III.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of

11

showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*; *see, e.g.*, *Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

Once the moving party has met its initial burden, the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. Cnty of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories … sufficient to convince a reasonable fact finder to find all the elements

of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

## IV.    Discussion

###    A.    Defendants' Failure to Exhaust Defense

Defendants argue that El's claims are barred by his failure to exhaust them as required by the PLRA, which mandates that "[n]o action shall be brought with respect to prison conditions under § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[6] The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and when raised by a defendant it constitutes a threshold issue to be addressed by the court. *See, e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

---

[6] District courts within the Third Circuit have held that state law claims filed in federal court are not subject to the PLRA's exhaustion requirement since that are not brought "under § 1983, or any other Federal law," as § 1997e(a) requires. *See, e.g.*, *Douglas v. Joseph*, No. 1:13-cv-1136, 2016 WL 561944, at *5 (M.D. Pa. Feb. 12, 2016); *Giamboi v. Prison Health Servs.*, No. 3:11-cv-159, 2014 WL 12495641, at *7 (M.D. Pa. Sept. 11, 2014), *report and recommendation adopted sub nom.*, 2015 WL 12159307 (M.D. Pa. Jan. 13, 2015). Thus, the Court addresses this affirmative defense solely with respect to the § 1983 claims (and any other federal law claims) asserted by El.

The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)). Courts are not given discretion to decide whether exhaustion should be excused, *id.* at 639-41, and there is no exception to the exhaustion requirement based on "futility." *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted).

The PLRA's mandatory exhaustion requirement means not only that a complaint filed before administrative remedies are exhausted is premature and cannot be entertained, it also means that failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. *Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*, 372 F.3d 218, 227-30 (3d Cir. 2004). That is because "the PLRA's exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93; *Spruill*, 372 F.3d. at 227-30.

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31 ("prison grievance procedures supply the yardstick for measuring procedural default."). Therefore, the procedural requirements for exhaustion in a given case "are drawn from the polices of the prison in question rather than from any free-standing federal law." *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill*, 372 F.3d at 231).

The Court of Appeals has explained that if the defendant demonstrates that an inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019) (citing *Rinaldi*, 904 F.3d at 268). "If there is no genuine

14

dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment." *Id.*

The Supreme Court explained in *Ross* that the term "available" means "capable of use" to obtain "some relief for the action complained of." 578 U.S. at 642 (quoting *Booth,* 532 U.S. at 738). It also explained that one of the ways in which an administrative remedy, although officially on the books, is not "available" is "when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Rinaldi*, 904 F.3d at 266-67 (quoting *Ross*, 578 U.S. at 644). *See also Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (misleading or deceptive instructions from a prison official, as well as clearly erroneous statements, can render a grievance process unavailable). Absent a situation where administrative remedies are not "available," a court may not excuse an inmate's failure to exhaust "irrespective of any 'special circumstances.'" *Ross*, 578 U.S. at 639.

As discussed above, there is no dispute that El did not file a grievance with respect to any of the § 1983 claims (or other federal law claims) he brings in this lawsuit. As a matter of law, therefore, Defendants have shown El failed to exhaust any of those claims. Accordingly, the burden now shifts to El to demonstrate that the administrative remedies were in fact unavailable to him. *See, e.g.*, *Rinaldi*, 904 F.3d at 268.

El has satisfied his burden only with respect to the excessive force claims he brings against Matson and Grantz and the procedural due process claim he brings against Pelesky. El has produced uncontested evidence that on September 1, 2021, which was prior to the date to file a grievance against these defendants had expired, he submitted a request slip stating that he wanted to file formal grievances against: (1) Matson and Grantz because they subjected him to "excessive force" on August 23, 2021; and (2) the "Lt." for depriving him, on August 25, 2021, of a "proper

board hearing[.]" (ECF 57-3 at 1, Pl's Ex. 1-A.) El also indicated on this request slip that before he submitted it he contacted Lowther to attempt to resolve his issues through "the chain of command." (*Id.*) He also made a notation on this request slip on September 24, 2021 that he received no response. (*Id.*)

This evidence supports El's contention that his efforts to grieve his excessive force claims against Matson and Grantz and his procedural due process claim against Pelesky were thwarted by prison officials because he received no response to his timely request for forms to grieve those claims. Defendants offer no facts to dispute El's evidence nor do they address his assertion that the evidence shows that the grievance process was unavailable to him. Thus, the Court rejects Defendants' exhaustion defense as it pertains to the excessive force claims El brings against Matson and Grantz and the procedural due process claim he brings against Pelesky.[7] *See, e.g.*, *Drew v. Walton*, No. 2:18-cv-1452, 2021 WL 2155448, at *4 (W.D. Pa. May 27, 2021) (denying summary judgment on the defendants' exhaustion defense when the plaintiff, who was a WCP

---

[7] In the Amended Complaint, El makes the vague assertion that Pelesky showed "intentional discrimination" toward him. (ECF 29 at 14.) There is no evidence that El grieved such a claim, or that his efforts to do so were thwarted by prison officials. Thus, if El is asserting a stand-alone federal law claim that Pelesky discriminated against him, Pelesky is entitled to judgment in his favor on it for failure to exhaust. Moreover, in El's response to Defendants' motion he discusses alleged constitutional or federal law violations that he did not raise in the Amended Complaint. For example, El contends in his response that "Defendants showed 'discriminatory practice' under 42 U.S.C. § 12132 Title II(d) when they denied [his] verbal complaint for medical treatment through [the] chain of command policy." (ECF 58 at 4.) He also argues that Pelesky, by sentencing him to 10 days in the disciplinary segregation housing unit, subjected him to harsh and unsanitary conditions. (*Id.*) A party may not use a responsive pleading to amend a complaint. *See, e.g.*, *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). However, even if the Court were to consider these allegations as if they had been properly included in the Amended Complaint, El failed to exhaust any claim that any of the Defendants subjected him to discrimination, denied him medical care, or is liable to him for the alleged conditions of his confinement in the disciplinary segregation unit. Nor has he produced any evidence that would support a finding that he tried to grieve such claims but was prevented from doing so.

inmate, was not provided with a grievance form even though he had requested grievance forms in an inmate request slip).

In contrast, El's has not directed the Court to any evidence that would support a finding that his efforts to grieve any other § 1983 or federal law claim, including the official capacity claim he asserts against Lowther and the due process claim he brings against Matson for filing a disciplinary report, were thwarted in any way. On the September 1, 2021 request slip, El does not state that he wants to grieve a claim that Matson violated his due process rights. As for Lowther, El checked a box on the request slip beside Lowther's name because he was the individual El had contacted in an attempt to resolve his complaints about the claims set forth therein through the "chain of command." El did not complain about any conduct on the part of Lowther in the request slip, however. Moreover, El did not state that he wanted to file a formal grievance against Lowther. Accordingly, El has not satisfied his burden of proving the grievance process was unavailable to him with respect to the official capacity claim asserted against Lowther or the due process claim asserted against Matson, or even that there is an issue of material fact in this regard.

Thus, based on the uncontested summary judgment record, Defendants' motion will be denied on the exhaustion defense with respect to the excessive force claims asserted against Matson and Grantz and the procedural due process claim asserted against Pelesky. Defendants' motion will be granted to the extent it seeks judgment in their favor on all other § 1983 or federal law claims El brings against any Defendant, including the due process claim asserted against Matson for issuing the disciplinary report and the official capacity claim asserted against Lowther. Because the latter claim is the only claim El brings against Lowther, the Court will terminate Lowther from this lawsuit based on the meritorious failure to exhaust defense (as well as for the reason discussed in the following section).

17

B.     Official Capacity Claims

Defendants contend that they are entitled to judgment in their favor on the official capacity claims that El brings against them. Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[,]" which in this case is Westmoreland County. *Id.* at 166.

A city or county government such as Westmoreland County is a "person" for purposes of § 1983 and can be liable only for its own misconduct. *Monell*, 436 U.S. at 692, 694. To establish § 1983 liability against a municipality such as Westmoreland County, El must prove that a municipal "policy or custom" is the "moving force" of the constitutional violation at issue. *Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the government entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law.") El has failed to support a claim that any Defendant can be liable in his official capacity under § 1983. There is no record evidence that the actions of Matson and Grantz were the result of, or otherwise executed pursuant to, a policy or custom of Westmoreland County or those of its jail. As for Pelesky, El's claim against him is that he deprived El of procedural due process when he failed to follow the policies and practices in place at the WCP, not that Pelesky engaged in misconduct pursuant to a municipal policy or custom. Similarly, El alleges that Lowther failed to follow the WCP grievance policy.

As for the official capacity state law claim of "physical assault" that El asserts against Matson and Grantz, Defendants contend that they are immune from liability under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8501 *et seq.* The PSTCA "immunizes municipalities from liability for all state-law tort claims," *Milbourne v. Baker*, No. 11-cv-1866, 2012 WL 1889148, at *4 (E.D. Pa. May 23, 2012), subject to nine enumerated negligence claim exceptions, *see* 42 Pa. Cons. Stat. § 8542, which do not apply in this case. "Furthermore, while there is statutory abrogation of immunity of individual employees for intentional torts, it does not remove the immunity of the local agency."[8] *Weaver v. Franklin Cnty.* 918 A.2d 194, 200 (Pa. Commw. Ct. 2007) (citing 42 Pa. Cons. Stat. § 8550; *Ferber v. City of Philadelphia*, 661 A.2d 470 (Pa. Commw. Ct. 1995); and *Petula v. Mellody*, 631 A.2d 762 (Pa. Commw. Ct. 1993)). Westmoreland County is thus immune from liability for the intentional tort claim of "physical assault" and, therefore, so are Matson and Grantz to the extent that claim is asserted against them in their official capacities.

In conclusion, El has offered no evidence to support a claim that any Defendant is liable to him in his official capacity. Defendants are therefore entitled to summary judgment with respect all official capacity claims. Further, because Lowther has only been sued in his official capacity, he is entitled to summary judgment on the claim El asserts against him and the Court will terminate

---

[8] There is no immunity against personal capacity claims for civil damages caused by acts which are within the scope of an office or duties where the local employee has engaged in "a crime, actual fraud, actual malice, or willful misconduct." 42 Pa. Cons. Stat. § 8550; *Devivo v. Phila. Parking Auth.*, No. 97-cv-2349, 1997 WL 734002, at *2-3 (E.D. Pa. Nov. 5, 1997); *Walker v. N. Wales Borough*, 395 F. Supp. 2d 219, 231 (E.D. Pa. 2005) ("Individual public employees sued in their personal capacities do not enjoy immunity under Pennsylvania law for willful, intentional torts."). Defendants do not assert that Matson and Grant are entitled to immunity on the state law intentional tort claim that El brings against them in their individual capacities.

him as a defendant in this lawsuit for this reason (as well as for the meritorious failure-to-exhaust defense raised by Defendants that the Court discussed in the previous section).[9]

      C.    <u>Excessive Force Claims Against Matson and Grantz in Their Individual Capacities</u>

The Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable to pretrial detainees, who are instead protected by the Due Process Clause of the Fourteenth Amendment, which protects a pretrial detainee against "punishment." *See, e.g.*, *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 193-94 (the Eighth Amendment's cruel and unusual punishment standards, which requires the plaintiff to show not only that force was excessive, but also that the force was applied maliciously and sadistically, does not apply to pretrial detainees) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). That is, "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id.* at 194 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015), which quoted *Graham v. Connor*, 490 U.S. 386, 398 n.11 (1989)).

Because El was a pretrial detainee on August 23, 2021, to prevail at trial on his Fourteenth Amendment excessive force claims against Matson and Grantz, he "'must show *only* that the force purposely or knowingly used against him was objectively unreasonable.'" *Id.* (quoting *Kingsley*, 576 U.S. at 396-97) (emphasis supplied by the Supreme Court). The issue of whether the force

---

[9] The Court notes that if El had sued Lowther in his individual capacity, that claim would be subject to dismissal because inmates "do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005). Thus, because access to prison grievance procedures is not a constitutionally mandated right, "allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983." *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015). *See, e.g.*, *Walker v. Mathis*, No. 15-cv-5134, 2016 WL 2910082, *9 (E.D. Pa. May 19, 2016) (an inmate does not have a constitutional right to an inmate grievance process and therefore cannot state a § 1983 claim based on a prison's failure to provide one.)

used was reasonable under the Fourteenth Amendment depends on the facts of the case, including "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id.* (quoting *Kingsley*, 576 U.S. at 397). These circumstances are analyzed "from the perspective of a reasonable officer on the scene.'" *Id.* (quoting *Kingsley*, 576 U.S. at 397.)

In support of their argument that Matson and Grantz are entitled to judgment in their favor on El's excessive force claims, Defendants focus only on the first and second factors listed above (the amount of force used and the extent of El's injury, respectively). As for the first factor, they contend that Matson and Grantz used minimal and objectively reasonable force when they physically escorted El to his cell because El did not comply with Matson's orders to return to his cell himself.[10] Defendants point out that the record lacks evidence that Matson or Grantz used handcuffs or other restraints on El, physically struck him, or used a chemical agent or electric body immobilizer device on him. El does not base his excessive force claims on this type of conduct, however. Therefore, the absence of such evidence is not material to this case, since El's excessive force claims are primarily predicated on his assertion that when he, Matson and Grantz reached his cell, they purposely pushed him onto the floor and injured his left knee.

---

[10] Defendants do not assert that El was malingering. In any event, viewing the evidence in the light most favorable to El, both the video evidence and his medical records support a finding that he was physically unable to return to his cell himself because he was unwell and was experiencing sciatica pain in his right leg.

21

Moreover, while Matson and Grantz maintain that they left El in his cell uninjured and in the standing position, El's cellmate, Williams, presents a different version of events. Williams avers in his declaration that Matson and Grantz "aggressively pushed" El into the cell and that when they did so El "fell straight to floor" because he could not support himself. (ECF 53 at 2, Williams' Decl.) Thus, there is a genuine issue of material fact as to whether Matson and Grantz purposely and forcefully pushed El onto the floor of his cell.

The second factor set forth above considers the extent of El's injury. Defendants point out, correctly, that neither the video taken on August 23, 2021 after the incident nor El's medical records from that date through August 30, 2021 supports his assertion that Matson and Grantz injured his left knee. While this is true, during a sick call visit on September 1, 2021, El did complain of left knee pain and stated that he "struck his knee when the 'CO's took him down' last week." (ECF 49-6 at 5, Defs' Ex. 6; ECF 50, Defs' CSMF ¶ 22.) Moreover, an x-ray of his left knee taken the next day revealed that he had "a hairline fissure fracture" from an injury El claimed he sustained on August 23, 2021 when "he fell onto his knee." (*Id.* at 3; ECF 50, Defs' CSMF ¶¶ 23-26.) Thus, there is also a material issue of fact as to whether Matson and Grantz injured El's left knee.

Based on the above, when viewing the facts in the light most favorable to El and drawing all reasonable inferences in his favor, a reasonable jury could conclude that Matson and Grantz applied wholly gratuitous and objectively unreasonable force on El by pushing him to the floor of his cell and injuring his left knee as punishment for his failure to comply with Matson's orders to walk back to his cell himself. Accordingly, upon consideration of the factors set forth above and the evidence cited to the Court by the parties, the Court concludes that there are genuine issues of

material fact that preclude summary judgment on El's excessive force claims. Therefore, the Court will deny Defendants' motion as to those claims.

      D.    <u>State Law Claims Against Matson and Grantz in Their Individual Capacities</u>

The Court next considers the related individual capacity claims of "physical assault" El asserts against Matson and Grantz. Under Pennsylvania law, "[a]n assault is an act done with the intent to put another in reasonable and immediate fear of a harmful or offensive contact with their body and that does, in fact, cause such fear." 2 Pa. Suggested Standard Civil Jury Instructions § 17.10 (5th ed. 2020) (citing *Cucinotti v. Ortmann*, 159 A.2d 216 (Pa. 1960)). Defendants assert that there is no evidence from which a reasonable jury could find that either Matson or Grantz committed such an act (that is, that they placed him in fear of harmful of offensive contact).

In response, El clarifies that the state law claim that he is asserting against Matson and Grantz is the intentional tort of battery. (ECF 57 at 2.) Pennsylvania law defines battery as "harmful or offensive contact with the person of another." *C.C.H. v. Philadelphia Phillies*, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008) (internal quotations and citations omitted). *See also* 2 Pa. Suggested Standard Civil Jury Instructions § 17.20 ("A battery is an act done with the intent to cause a harmful or offensive contact with the body of another…and that…results in the harmful or offensive contact with the body of another.")

Given El's status as a pro se plaintiff, the nature of the allegations he made against Matson and Grantz in the Amended Complaint, and the requirement that the Court must liberally construe his filings, the Court accepts his explanation. Under the circumstances, it is fair to conclude that he asserted a state law claim of battery against Matson and Grantz in the Amended Complaint. Accordingly, the Court will deny Defendants' motion to the extent that they seek judgment in their favor on that individual capacity battery claim.

E.     Procedural Due Process Claim Against Pelesky in His Individual Capacity

El claims that Pelesky is liable to him because the disciplinary hearing over which he presided as Chairman did not satisfy the requirements of due process. Defendants assert that Pelesky is entitled to judgment in his favor because there is no evidence in the record from which a reasonable jury could conclude that Pelesky violated El's procedural due process rights.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). In the context of a pretrial detainee who is sanctioned with disciplinary segregation for violating prison rules, such sanction "cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018). These protections are: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges twenty-four hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the inmate is illiterate or if complex issues are involved; and (5) a written decision by the factfinder as to the evidence relied on and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-72.

In the Amended Complaint, El alleges that his hearing lacked an impartial decisionmaker and that he could not call witnesses and present evidence.[11] (ECF 29 at 14.) Defendants correctly point out that no evidence supports any of these allegations.

---

[11] There is no evidence that El's disciplinary proceeding did not comply WCP's policies. In any event, to the extent El raised a stand-alone claim predicated solely on his assertion that his disciplinary hearing did not comply with WCP's policies, that claim is not cognizable under *Footnote continued on next page….*

Moreover, the summary judgment record establishes, without contradiction, that on August 25, 2021, El had a disciplinary hearing before Pelesky and two other individuals, none of whom were involved in the incident for which El was charged. It is also undisputed that at this hearing El presented his own testimony in his defense, stating that he was not feeling well and suffers from nerve damage and that was why he could not lock up himself when Matson ordered him to do so. (ECF 49-3 at 15, Defs' Ex. 3.) The uncontradicted evidence also shows that El received an "Inmate Request for Witness" form and that Williams completed that form. (ECF 49-3 at 8-9, Defs' Ex. 3.) As the Court previously noted, El does not explain why he did not present Williams' statement at the disciplinary hearing. There is no evidence from which a reasonable jury could conclude that El was prevented from doing so.

Finally, El also alleges in the Amended Complaint that he did not receive a written statement of the Disciplinary Hearing Board's decision. (ECF 29 at 14.) Defendants have produced uncontroverted evidence that he received a copy of the Board's Incident Hearing Summary, however. (ECF 50, Defs' CSMF ¶¶ 11, 14; ECF 49-3 at 4, Defs' Ex. 3.) El's unsubstantiated assertion that this evidence is "forged" (ECF 57 at 3) is insufficient to call into question the validity of this evidence or to create a material issue of fact. *See, e.g.*, *Jones v. Hendricks*, 173 F. App'x 180, 183 (3d Cir. 2006) (no genuine issue for trial existed when plaintiff failed to support his averment that defendant falsified documents).

---

§ 1983. *See, e.g.*, *Pettis v. Everhart*, No. 3:19-cv-1308, 2020 WL 5548719, *5 (M.D. Pa. Sept. 16, 2020) (plaintiff's claims against defendants for violating prison policies dismissed for failure to state a claim upon which relief can be granted), *aff'd*, 857 F. App'x 712, 714 n.4 (3d Cir. 2021); *Noble v. Wetzel*, No. 18-cv-1160, 2019 WL 4279975, *10 (W.D. Pa. Aug. 1, 2019) (plaintiff's claim that defendants violated prison policies must be dismissed with prejudice), report and recommendation adopted by 2019 WL 4279016 (W.D. Pa. Sept. 10 2019).

For these reasons, there is no genuine issue of material fact that would preclude the Court from granting Defendants' motion as it pertains to the procedural due process claim that El asserts against Pelesky in his individual capacity. Therefore, summary judgment will be granted in favor of Pelesky on this claim. Because, for the reasons discussed above, Pelesky is also entitled to summary judgment on the official capacity due process claim El asserts against him, the Court will terminate Pelesky from this lawsuit.

## V.    Conclusion

For these reasons, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment. (ECF 47.) The motion will be granted in favor of Defendants as to all claims asserted by El except for El's claims that Matson and Grantz subjected him to excessive force and committed the intentional tort of battery. Defendants' motion is denied with respect to those claims. The Court will terminate Lowther and Pelesky as defendants in this lawsuit.

An appropriate Order follows.


Dated: June 22, 2023                           BY THE COURT:

                                               /s/ Patricia L. Dodge
                                               PATRICIA L. DODGE
                                               UNITED STATES MAGISTRATE JUDGE